Good afternoon. May it please the court. This is a case that draws into question when a state removes a state case or a case filed in a state court making federal claims to federal court, what, if any, level of protection do they have? Plaintiff Biggs is African-American. He was 26 years of exemplary employment. He came across a situation where he had to have individuals to write a statement where they alleged to have been victims of excessive force. So he can handcuff them in the front so they can write. Instead of the back, they had to go to a writing room, which was six feet, literally six feet. He's demoted after 26 years of impeccable record. He's demoted from correctional captain to a correctional officer, six levels down. During the administrative hearing on that issue where only demotion without just cause was at issue, we learned that there were others in that very same incident who received absolutely no reprimand and it was their own videotape. From that, it appeared that there was a Section 1981 action. Knowing the case law, like I was aware, we filed in state court but only raised requests for adjunctive relief, that is, for reinstatement and for any personnel records that showed demotion to be removed from the file. And the court, on a motion to dismiss, denied it as to the defenses that were raised. On a motion for summary judgment hearing, the state who, in their answer, by the way, they only raised the affirmative defense for sovereign immunity to the extent it was for damages, not for adjunctive relief. So the affirmative defense they raised in their answer was limited purely to damages. We didn't make a damages claim. And you're here in front of us saying you're here only on adjunctive relief to get prospective relief regarding his reinstatement. Is that correct? Yes, Your Honor. Okay. Now, I understand your argument with regard to Secretary Hooks. But what about DPS? Wouldn't DPS retain its immunity? I think that that would be, you stated you understood about the secretary. Correct.  Right. It's quite frankly not clear in my mind. I've seen it go both ways. And that's why I raised it for both, even though it's essentially the same. But do you have case law saying that the agency itself is not immune? It is not immune? Uh-huh. I think in the Lapidese decision, you look at the fact that they removed it from state court to federal court. Therefore, you got immunity as to suit is waived. But then as far as sovereign immunity, you look to whether the agency itself raised it. And it was not raised in affirmative defense. I don't think it was raised improperly in summary judgment. But even that notwithstanding, if we evaluated the case on the Lapidese, Supreme Court's Lapidese decision, or the Ex parte Young, either one, one or the other, I think we should prevail under the law. But Lapidese relates to state law claims. And you're saying, no, we've got an Ex parte Young reinstatement claim, correct? That's right. Based on federal question. And because this is purely a federal claim, Lapidese really wouldn't come into the mix, would it? So I'm not sure that Lapidese answers the question regarding the state and whether the state can be held liable here. I think with the federal question, and it is a case of first impression as best as I can tell, that issue, because I'm not aware of another court that has addressed the issue of a removal and immunity for 11th Amendment for federal claims. The only ones I'm aware of were state claims. As a practical matter, Mr. Felbeck, even if the state were to be immune, I mean, your relief is for prospective relief on behalf of your client. And if a court were to grant that relief, it would compel the director of the department to do exactly what you wanted. So I'm not sure there really matters that whether or not the department itself remains as a defendant in the case. I would agree that the distinction is academic. In effect, it would be the same, notwithstanding how the court would rule whether it's one or the other. Right. You'd still be able to get your relief. But I'm just thinking about how we'd write the opinion, what the opinion would say. Understood. And I'm just not aware of a case that addresses that. So out of exercise of precaution, I added the entity, but it's not clear in my mind, at least from my research. Better to add more than less, I guess. That was my thinking, particularly when I wanted to protect the statute of limitations issue on this case. And then with regard to the Ex Parte Young deception, the department, to their credit, acknowledged for the first time in their response to my opening brief that this court has found a request for reinstatement to be prospective injunctive relief. And it's not just one case, but at least two here, the Bland v. Roberts case and the Coakley v. Welch case. Also, other circuits and defense, to their credit, acknowledged, has found that reinstatement for a motion is actually prospective injunctive relief. I think it's controlling. Also, the case, which is the quorum claim, which has to do with the sovereign immunity waiver by the state for injunctive relief, that actually dealt with a Section 1983 action for a demotion. So we think it's pretty clear on that. Now, the department did need to raise an issue in terms of what do they say from here. If they're going to concede what's pretty clear in the law, they assert that Biggs is a stop from relitigating claims that were finally adjudicated or decided in the OAH proceedings. That's the Administrative Proceedings of North Carolina. And I have to point out, and there's several parts in the brief where it's a false assertion. For instance, it never was raised in the administrative hearing. In the brief on page 3, for instance, defendants state, after a hearing, the state's OAH found that Biggs had not been disparately treated. If you look at Supplement JA Joint Appendix 5, beginning of page 5, you read that. There's absolutely no finding of disparate treatment in that decision. Well, I understood the state's argument to be that he had been fired for just cause and implicit in that is a conclusion of sorts that because he was fired for just cause, among the reasons why he was not fired was that having anything to do with race. Understood. Under the Newbern decision, that's the North Carolina Supreme Court decision, the state specifically states you can reserve questions that's protected by statute from the administrative. You can't raise them both places. So if we were to raise the discrimination claim, for instance, in the administrative petition for a contested case, that's Supplement JA 1, if we were to check that box, you have race discrimination, which we didn't, or retaliation for race, then there would be a problem. But because we didn't do that under the Newbern case, which is very clear, you can do one or the other, but you can't do both. And so, you know, by saying this, either it would be a misunderstanding of how the law construes that. There was no finding in terms of disparate treatment for race that was stated. They even state that the OAH conclusively determined that Biggs was not treated dissimilarly from employees in similar positions. They didn't conclusively determine that on the race context or on a just cause context. If you look at the decision, the only thing where they talk about whether their treatment was different would be, I think it's on 43, 42. It states that Saffrit, who is the department's person that's responsible for making sure everyone's treated equally or should be, acknowledged that respondent disciplined another captain, Roger Watson, on December 21st, 2010, by issuing a written warning to Watson for a grossly inefficient job performance because he directed the control room to open inmate chair's cell door before the inmate was restrained. Saffrit admitted Watson's actions put other prison staff in danger. Saffrit was unable to explain why Captain Watson received the lesser disciplinary sanction of written warning instead of receiving the substantial demotion that petitioner received reportedly for violating the same policy. So they acknowledged he couldn't answer it, but didn't state any conclusion that they were treated differently or anything. It was just left open. And that's when we were made aware and we said, here's, you need to look at the Section 1981 action, particularly with the evidence that we had in terms of the disciplinary records of the department. Paragraph 43, it states, Mr. Saffrit, again, the department representative, was unable to explain why other prison staff members received no disciplinary action for failure to restrain the inmates while bringing them to the intake holding cell. That's the only finding that has anything to do with disparate treatment. And it's just that he was unable to explain it. It wasn't that it was disparate treatment. He just was unable to explain it. That's where we left with the administrative action. Completely doesn't adjudicate anything with regard to disparate treatment. It does as to just cause. But we know from the Newbern decision that just cause alone does not in any way affect a statutory claim as long as you don't raise it in the administrative claim. So defendant also raises a collateral estoppel claim. That's, again, there was nothing in the affirmative defense as far as that. It was not raised in the motion for summary judgment until the reply brief. You're bringing up a whole lot of different questions and everything, but I wonder if we need to go any further than saying that the request for reinstatement is an action which is viewed prospectively under the precedent of this circuit. You cited Coakley and Bland v. Roberts as another question. And just according to circuit precedent and other circuits, this is prospective in nature and would fall within the ex parte Young exception. And that was the ground on which the district court erred. And I wonder if we need to go any further than saying that he erred on this and that your suit is not barred but rather fits within what ex parte Young was talking about and that you may proceed. I agree with that, Judge. On that, I think it is compelling. It is controlling. I don't see how it could possibly be controverted. But it is, you know, we can sort it. A lot of the things you're talking about can be sorted out on remand. But the core question is, has it been answered by our price circuit cases? I agree with that, Judge. With that in mind, I'll take any questions, but I'll sit down and allow the defense to proceed because I do think it's clear cut. And then in rebuttal, if there's anything I need to address, I'd like the ability to do that. Thank you. Thank you, sir. Narasimhan, please let us hear from you on this. May it please the court. My name is Sripriya Narasimhan, and I represent the North Carolina Department of Public Safety and Secretary Hooks. I want to get right to the core of, I think, what the court's concern is here, in that even if the department itself is immune from suit, Secretary Hooks might still be on the hook. Could you speak up, please? Sure. I want to respond directly to what I think the court's concern here is, which is that even if the department is immune from suit, Secretary Hooks might still be on the hook, so to speak, under 1983 for prospective injunctive relief. Now, the reason why the district court's decision should be affirmed on that ground, or on alternative grounds there, is that no remand here is necessary. The collateral estoppel issue was raised on a motion to dismiss. It was fully briefed. And there's really no reason why this has to go back down to the district court for further evaluation on that point. Mr. Biggs' claim for relief is that he Do we even need to get to the collateral estoppel issue? I think yes, because Mr. Biggs' 1983 claim is foreclosed because of the OAH. Well, there was no racial discrimination claim in the administrative hearing. Wasn't it simply for just cause? That's true. But in the way in which Mr. Biggs fled his just cause claim, it turns out that his claim under 1983 differs from his OAH claim only insofar as he believes he was treated differently from other employees for the same conduct because of race. The precondition of his racial discrimination claim under 1983 is that he was treated differently from other employees for substantially the same conduct. The OAH found conclusively, and that's on the supplemental JA page 15, that the reason why he was treated differently was because he was not being compared to others who had violated the same policy or who were engaged in similar conduct. He did not have a comparator. There were no other similarly situated employees. He was treated differently because he was the officer in charge of the facility and as a supervisor was held to a higher standard. So his claim for racial discrimination ultimately fails because he cannot But that all occurred in a vacuum because there was no The context of race just never appeared on this record, right? That's true, but if the OAH has found that he was not treated differently, and we give that finding preclusive fact, then a court cannot find that he was treated differently because of race because he was simply not treated differently from similarly situated individuals. His 1983 claim requires two different findings, one that he is treated differently and the other that the treatment was as a result of race. The OAH found that he wasn't treated differently, so it almost doesn't matter. It's not that it doesn't matter. We don't get to the second step of whether he was treated differently because of race. Well, but aren't plaintiffs allowed to show that even if superficially a termination or a demotion or some adverse action was taken that appears to be for appropriate reasons that it still might be a pretext for some more nefarious reasons such as race and that wasn't litigated? Sure. A plaintiff could show that. The reason why Mr. Biggs here can't is because the OAH found that he simply wasn't treated differently. There were no other employees who had engaged in the same conduct. So he couldn't show. There's simply no comparator in this situation because it all arose from one incident. Now, you know, the weird procedural posture of this case is that we've actually completed discovery and so we've briefed motions for summary judgment. And when we go back to the record, there's nothing in the record that shows that Mr. Biggs has any evidence to suggest that there was a racial intent or race-discriminating intent behind his firing. The evidentiary record is exactly the same as it was in the OAH proceeding. So where the OAH found that there was just cause for removal and didn't find that there was a racially discriminatory basis for that removal, it would be difficult then for a federal court to find that there was a racially discriminatory basis for that removal. I want to clear up, if I may, a little bit about the conversation we were having, a little bit of confusion that we were having on the sovereign immunity aspect. I think, Judge Keenan, you helpfully pointed out that Lapidus only involves removal for state claims. This court has actually recently determined in Pissarro v. Virginia, and I think the decision came out in August of this year, that even if the state removes federal claims, it still retains the immunity following the Stewart precedent. So there is precedent on this point, and there's Fourth Circuit case law squarely on this point, that the state would retain immunity here, even upon removal. I also just wanted to touch very quickly on the adequacy of the administrative proceeding here. The OAH proceeding and the state administrative scheme that is provided under the state's Human Resources Act allows for a plaintiff to bring a racial discrimination claim under the state adjudicatory scheme. The statute also allows the OAH to fashion a remedy that includes promotion, that includes reinstatement of prior salary positions, and any other equitable relief, which would also include the expungement of the record. So if Mr. Biggs did indeed find through the course of his litigating his OAH claim that there was a racial discrimination claim, he could have amended his administrative claim to include a racial discrimination claim. But he couldn't file a 1981 claim. I think you've conceded that, haven't you? In the OAH proceeding? Right. Correct. But given that his 1981 claim is one that is just different in kind than a claim that he could have brought in the OAH proceeding, he could have also brought it in the OAH proceeding. He had a couple of choices in this instance. He could have brought his just cause claim in the OAH proceeding and then filed a separate 1983 claim against Secretary Hooks in his official capacity in state court. That probably would have been fine. I assume that one of the parties would have asked to have one of the actions stayed. We need to get into the collateral estoppel at this point. To me, the district court dismissed this case on sovereign immunity grounds, and I don't think that there's an 11th Amendment bar under our precedent. But the collateral estoppel ground, he denied relief. He rejected your views on collateral estoppel. But I'm just not sure why we, you know, the case is a bit of a tangle. But I'm just wondering whether the discrete question before this is whether the 11th Amendment and state sovereign immunity bars the suit against Mr. Holder, Mr. Hooks in his official capacity. And as I mentioned to the colloquy with opposing counsel, I think there was an error made here under our, and I think it's perspective. You could argue if we were working on a blank slate, that reinstatement encompassed a pay for the restoration of lost salary, and that it was retrospective in that respect, and that it was a draw on the state treasury in that respect, and that it was covered under Edelman v. Jordan. But that water is over the dam. As I read the circuit precedent, that argument, the Edelman argument, and the reinstatement encompasses restoration of past salary, was rejected in favor of the interpretation that reinstatement is perspective in nature. And the district court erred on that in light of our circuit precedent. I think we've got to follow it. And the district court can understand that he's erred and move ahead from there. There would be no bar. The district court from, you can renew your argument on collateral estoppel on remand, can't you? Yes. So I take the court's question to be, you know, why should we affirm on alternative grounds? Why don't we just send this back? Is that your point? I just want to make sure I'm answering your question. You would like us to affirm on an alternative ground. That's exactly right. And I understand that. You think on collateral estoppel. So we can get into those weeds there, but sometimes it's good to affirm on an alternative ground, and other times it's good to let the parties brief something and let a district court decide it. I'm just not going to try to take everything. I'd like to give you some incentive to do so, if I may. I think the reason why it would behoove this court to address the alternative ground is that it has already been fully briefed. And the parties, I mean, we did not ambush Mr. Biggs on appeal about this point. It was fully briefed in a motion to dismiss. And while we weren't able to prevail upon Judge Boyle in the district court, we hope to be able to prevail upon you here because the affirmance on alternative grounds is very important for judicial efficiency and economy here. The failure to grant our motion to dismiss has already led to extensive discovery and motions on summary judgment. This case has already gone far along. There's really no more factual record to develop here. There is no new evidence. The district court didn't really rule on our motions for summary judgment on the substantive grounds in the first place. So there's really no reason to send this back to the district court on a case of pure law, on a question of pure law, which is what the collateral estoppel question is here. It's a mixed question of law and fact, but it's one that this court can and should rule on. And the affirmance on that ground would help make the case move more efficiently. And that would be a reason why this court should do it because the law is there. The facts are there. We fully briefed it. And it doesn't appear as though there is much room for debate on the factual basis, on the factual grounds of why the OAH reached its conclusive findings that Mr. Biggs was not treated differently from similarly situated individuals and his complaint in this 1983 claim. So that would be a reason why this court should affirm on alternative grounds. Thank you. Do you have anything further you wish to add? If the court has no further questions, I think... Hold on and let me see if the court has further questions. We have no further questions. Thank you. Thank you. Mr. Philbeck, you reserve some rebuttal time. Thank you, Judge. Just a couple points. The fact that we found out about a potential claim for racial discrimination under Section 1981 during the OAH action, counsel says they could have amended. I don't know if that's true or not. If there's a specific, presumably the rules of procedure would apply. But that statement completely ignores Newbern. Newbern says plaintiffs have the choice to raise a statutory claim, one or the other, but not both. And Mr. Biggs reserved the right, if the evidence showed, to raise the 1981 action in a state forum. And if the state wants to remove it in federal court, they may. But notwithstanding, this is a case that Ex parte Young, we think, directly addresses. Collateral estoppel was determined, and it was denied by the district court. So she's correct in that, but it was denied. It wasn't persuasive. On summary judgment, the district court didn't even rule on that issue. So we just ask that the court reverse the decision and remand it for further proceedings. Thank you. All right, sir. Thank you.
judges: J. Harvie Wilkinson III, Barbara Milano Keenan, Albert Diaz